USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/21/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| American Empire Surplus Lines Insurance Company, | |
| Plaintiff, | 1:23-cv-04942 (AT) (SDA) |
| -against- | OPINION AND ORDER |
| J.R. Contracting & Environmental Consulting, Inc., | |
| Defendant. | |

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE:**

Pending before the Court is a motion by Defendant J.R. Contracting & Environmental Consulting, Inc. ("J.R." or "Defendant"), pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), to exclude the proposed opinions of Plaintiff's expert, Thomas M. Trezise ("Trezise"), which are offered in rebuttal of the opinions of Defendant's expert, Arthur R. Nelson ("Nelson") (hereinafter, the "*Daubert* Motion"). (Def.'s 8/16/24 Not. of *Daubert* Mot., ECF No. 75.)[1]

For the reasons set forth below, Defendant's *Daubert* Motion is GRANTED IN PART and DENIED IN PART.

---

[1] The Honorable Analisa Torres referred the *Daubert* Motion to the undersigned as a non-dispositive motion. (Am. Order of Reference, ECF No. 54.) "Because *Daubert* motions are 'nondispositive of the litigation,' they are routinely determined by magistrate judges, subject to 'clear error' review by the district judge." *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, No. 17-CV-04576 (DEH) (BCM), 2024 WL 1115944, at *3 n.4 (S.D.N.Y. Mar. 14, 2024) (quoting *Israel v. Springs Indus., Inc.*, No. 98-CV-05106 (ENV) (RML), 2007 WL 9724896, at *2 (E.D.N.Y. July 30, 2007)) (cleaned up).

**BACKGROUND[2]**

I. <u>**Factual Overview**</u>

Plaintiff American Empire Surplus Lines Insurance Company ("AESLIC" or "Plaintiff") issued to J.R. a commercial excess liability policy (the "Policy"), which included a premium charge to be computed as a percentage of J.R.'s gross receipts during the policy period. *Am. Empire*, 2024 WL 3638329, at *1. Plaintiff assigned an advanced premium to the Policy based on J.R.'s estimate of its gross receipts during the policy period, which was subject to adjustment if a post-policy audit reflected that J.R.'s actual gross receipts exceeded its initial estimate. *Id.*

The post-policy audit concluded that J.R.'s actual gross receipts exceeded its initial estimate, and thus J.R. owed an additional premium in the amount of $487,386.00. *Am. Empire*, 2024 WL 3638329, at *2. Following non-payment of this additional premium, AESLIC brought this action on June 13, 2023, seeking to recover payment of said additional premium. *Id.* On March 29, 2024, Nelson issued his expert report in support of J.R. *Id.*

II. <u>**Trezise Report**</u>

After Nelson issued his expert report in support of J.R. on March 29, 2024, *Am. Empire*, 2024 WL 3638329, at *2, on May 29, 2024, Trezise issued his rebuttal report in support of AESLIC (the "Trezise Report"). (Trezise Rpt., ECF No. 76-2.) Based on his review of the audit and the Nelson Report, Trezise offered the following four opinions:

> 1. The Policy was a surplus lines policy and, as such, not regulated by the State of New Jersey. [AESLIC] had full discretion to establish the forms

---

[2] The Court assumes familiarity with its prior Opinion and Order regarding a *Daubert* motion filed by Plaintiff. *See Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*, No. 1:23-CV-04942 (AT) (SDA), 2024 WL 3638329, at *1-3. (S.D.N.Y. Aug. 2, 2024).

      and terms of the Policy as well as the rules and rates by which the premium was determined.

      . . .

2.     The terms of the Policy solely define the relationship between [AESLIC] and J.R. . . .. Standards and practices, whether of admitted or surplus lines insurers, have no application.

      . . .

3.     The Policy provided coverage for significant risks. The coverage was not illusory.

      . . .

4.     J.R. . . . and . . . Nelson cannot challenge the underwriting process of [AESLIC].

      . . .

(Trezise Rpt. at 4-10 (emphases omitted).) While addressing a number of Nelson's premises and assumptions, Trezise maintains that "rate [at issue] was unmistakably and clearly stated and anyone familiar with basic arithmetic can understand how it determined the premium. The Policy has no flaw as to the definition of the [r]ates and is, therefore, enforceable." (*Id.* at 7.)

On July 17, 2024, Defendant deposed Trezise regarding the opinions expressed in the Trezise Report. (Trezise Dep., ECF No. 76-3.)

### III.     J.R.'s *Daubert* Motion And Relevant Procedural History

On July 26, 2024, J.R. moved for leave to file a *Daubert* Motion to exclude Trezise's proposed expert opinions. (Def.'s 7/26/24 Letter, ECF No. 72, at PDF p. 1.) Because there was a *Daubert* motion to exclude the expert opinions of Nelson (the "Nelson *Daubert* Motion") pending before the Court at that time, on July 29, 2024, the Court ordered J.R. to

refrain from filing the motion until after the Court's decision on the Nelson *Daubert* Motion. (7/29/24 Order, ECF No. 73 ("Because the Court's decision on such motion may affect the scope of Nelson's testimony, and by extension the scope of any rebuttal, Defendant shall refrain from filing its motion until after the Court's decision on [the Nelson *Daubert* Motion.").)

On August 2, 2024, the Court granted in part and denied in part the Nelson *Daubert* Motion. *Am. Empire*, 2024 WL 3638329 at *1. Specifically, the Court found:

> In sum, although Nelson shall not be permitted to testify about his interpretation of the Policy, and any other legal conclusions, the Court finds that it is more likely than not that Nelson is qualified to serve as an expert, that his opinions are based on sufficient facts, that he applied reliable principles and methods and that his opinions will help Judge Torres to understand the evidence. Thus, Nelson may provide testimony about the insurance industry and audits, and may provide his opinion regarding premiums due under the Policy based upon a hypothetical set of facts.

2024 WL 3638329 at *10.

On August 16, 2024, J.R. filed its *Daubert* Motion (and supporting papers) to exclude Trezise's expert opinion. (Def.'s 8/16/24 Not. of *Daubert* Mot.; Palatucci Decl.; Def.'s Mem., ECF No. 77.) On August 29, 2024, AESLIC filed its opposition papers. (O'Connor Decl., ECF No. 79; Pl.'s Opp'n Mem., ECF No. 80.) On September 6, 2024, J.R. filed its reply memorandum. (Def.'s Reply, ECF No. 81.)

## LEGAL STANDARDS

Rule 26 of the Federal Rules of Civil Procedure provides that parties can submit expert testimony that is "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). "Rebuttal [expert] evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the

4

adverse party." *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (citation omitted).

Rule 702 of the Federal Rules of Evidence, which governs the admissibility of testimony by expert witnesses, including rebuttal experts, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

> The Rule 702 standard incorporates the principles enunciated in *Daubert*, 509 U.S. at 589, 597, in which the Supreme Court held that trial courts have a gatekeeping function to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable, and in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), in which the Supreme Court held that *Daubert's* general gatekeeping obligation applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge.

*Atl. Specialty Ins. v. AE Outfitters Retail Co.*, 970 F. Supp. 2d 278, 284 (S.D.N.Y. 2023) (cleaned up). Thus, "rebuttal experts must meet Daubert's threshold standards regarding the qualifications of the expert, sufficiency of the data, reliability of the methodology, and relevance of the testimony." *Scott*, 315 F.R.D. at 44 (citing cases).

5

The proponent of expert testimony must establish admissibility by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987). Nevertheless, Rule 702 "embodies a liberal standard of admissibility for expert opinions." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005), especially in the context of bench trials. *See Am. Empire*, 2024 WL 3638329 at *3.

## DISCUSSION

In determining the instant motion, the Court considers below the following criteria for expert testimony, *i.e.*, Trezise's qualifications as an expert, whether his opinions are based on sufficient facts or data, whether he used reliable principles and methods and whether his opinion is helpful to the trier of fact.[3]

### I.  Qualifications

#### A.  Parties' Positions

Defendant argues that Trezise is not qualified as an expert because he lacks relevant experience in conducting post policy premium audits, especially in connection with surplus lines policies. (Def.'s Mem. at 11.) Plaintiff, on the other hand, argues that Trezise "possesses knowledge, experience, training, and education" as to each of the areas relevant to his opinions. (Pl.'s Opp'n Mem. at 5.) These areas, Plaintiff avers, include the excess and surplus lines insurance market in New York and insurance company claims handling as to the

---

[3] In rendering its decision, the Court is mindful that there will be a bench trial in this case and, as such, the Court may take in the expert testimony freely and separate helpful expert opinions from ones that are not grounded in reliable methodology. *See Joseph S. v. Hogan*, No. 06-CV-01042 (BMC) (SMG), 2011 WL 2848330, at *3 (E.D.N.Y. July 15, 2011); *see also Am. Empire*, 2024 WL 3638329 at *3 ("While standards for admissible evidence are not out the window entirely in a bench trial, all doubts at a bench trial should be resolved in favor of admissibility." (citation omitted)).

potential applicability of the cited exclusions contained in the insurance policies at issue here.[4] (*Id.*) Specifically, Plaintiff proffers that Trezise (1) "has assisted underwriting departments in the development, drafting, and approval of policy forms, underwriting classifications, rate filings, and risk management service," (2) "has worked for a total of over thirty years in different capacities for various insurers," and (3) "has served before as an expert witness in insurance industry issues." (*Id.* at 6.)

B. <u>**Legal Standards**</u>

The Court incorporates the legal standards regarding an expert's qualifications that are set forth in its prior Opinion and Order. *See Am. Empire*, 2024 WL 3638329, at *5. These standards are as follows:[5]

Rule 702 requires a trial court to make an initial determination as to whether the proposed witness qualifies as an expert. A court first must determine whether a proposed expert is qualified to provide an opinion, before then assessing the reliability and relevance of the expert's proffered testimony. To determine whether a witness qualifies as an expert, the court first must ascertain whether the proffered expert has the educational background or training in a relevant field. Any one of the qualities listed in Rule 702—knowledge, skill, experience, training or education—may be sufficient to qualify a witness as an expert. Even if a proposed expert lacks formal training in a given area, he may still have practical

---

[4] The complete list of areas that Plaintiff avers are relevant to the analysis of claims in this action can be found in the Court's prior Opinion and Order. *See Am. Empire*, 2024 WL 3638329, at *4.

[5] In the following two paragraphs, the Court has omitted citations to the case law supporting each of the statements. The citations can be found in the Court's prior Opinion and Order. *See Am. Empire*, 2024 WL 3638329, at *5.

experience or specialized knowledge qualifying him to given opinion testimony under Rule 702. But if the witness is relying solely or primarily on experience, then he must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.

The Court must compare the area in which the witness has superior knowledge, education, experience or skill with the subject matter of the proffered testimony. If the expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent. Thus, an expert should not be required to satisfy an overly narrow test of his own qualifications, and the court's focus should be on whether the expert's knowledge of the subject is such that his opinion will likely assist the trier of fact in arriving at the truth. Assertions that the witness lacks particular educational or other experiential background, go to the weight, not the admissibility, of the testimony.

### C. Application

The Court finds that Trezise is qualified as an expert (but not as to legal conclusions, *see* Discussion Section III, *infra*). Trezise graduated *cum laude* from Western Maryland College in 1975 with a Bachelor of Arts in American Studies and Political Science. (Trezise Rpt. at 15.) He then obtained his Juris Doctor degree from Washington & Lee University in

1978. (*Id.* at 14.) In 2009, Trezise was licensed as an adjuster in the State of Florida.[6] (*Id.* at 15.)

From 1978 to 1992, Trezise practiced as a trial attorney, where his experience included commercial, and property & casualty and life insurance coverage and bad faith litigation and his expertise included commercial litigation, premises and premises security liability, and insurance coverage. (Trezise Rpt. at 14.) Trezise held various positions in the insurance industry for over 30 years and, during that time, he supervised individuals who conducted premium audits. (Trezise Dep. at 16-17.) He also was involved in litigation where there was a dispute "over the premium owed or whether additional amounts were owed under the policies." (*Id.* at 27.) The policies in that litigation were "structured similar to the policies in this case," because there was "an [upfront] premium involved and then a premium due at the end." (*Id.*)

Additionally, Trezise's self-identified expertise includes "the management of primary and excess property and casualty liability, property, auto physical damage, and worker's compensation business operations, claims, coverage, and litigation, as well as reinsurance and surplus lines issues in those lines." (Trezise Rpt. at 12.) He also has assisted underwriting departments in the development, drafting and approval of policy forms, underwriting classifications, rate filings and risk management services. (*Id.* at 1; *see also* Trezise Dep. at 18-20.)

---

[6] Trezise's adjuster license has since expired. (Trezise Rpt. at 15.)

The Court finds that Trezise possesses "specialized knowledge" in insurance that will more likely than not "help the trier of fact to understand the evidence or to determine a fact." Fed. R. Evid. 702(a). Also, because of his experience of over 30 years in the insurance industry and related experience involving insurance coverage as a trial attorney, he has "experiential qualifications in a general field closely related to the subject matter in question." *Zyprexa Prods.*, 489 F. Supp. 2d at 282 (citation omitted). Considering the "liberal thrust" of the Federal Rules and their "general approach of relaxing the traditional barriers to 'opinion' testimony," Trezise is qualified as an expert to provide an opinion (but not as to legal conclusions). *Daubert*, 509 U.S. at 588-89; *see also Zyprexa Prods.*, 489 F. Supp. 2d at 282 ("[T]he standard for qualifying expert witnesses is liberal.").

## II. Existence Of Sufficient Facts Or Data And Reliable Principles And Methods

### A. Parties' Positions

Defendant argues that Trezise's opinions are not well-grounded, are not reliable, are purely speculative, and lack analysis, because Trezise has no experience with post-policy premium audits. (Def.'s Mem. at 11-14.) Plaintiff disagrees. (Pl.'s Opp'n Mem. at 8-10.)

### B. Legal Standards

The Court incorporates the legal standards regarding the existence of sufficient facts or data and reliable principles and methods that are set forth in its prior Opinion and Order. *See Am. Empire*, 2024 WL 3638329, at *7. These standards are as follows:[7]

---

[7] In the following two paragraphs, the Court has omitted citations to the case law supporting each of the statements. The citations can be found in the Court's prior Opinion and Order. *See Am. Empire*, 2024 WL 3638329, at *7.

In determining the reliability of an expert's testimony or report, courts should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case. Often, this is reflected by means of a technical theory that has been tested, subject to peer review and publication, has a known or potential rate of error with some controlling standards and is generally accepted in the scientific community. However, these factors do not constitute a definitive checklist or test. The inquiry is a flexible one and must be tied to the facts of a particular case with attention to the nature of the issue, the expert's particular expertise, and the subject of his testimony.

There is no separate Rule 702 issue stemming from the fact that the relevant reliability concerns focus upon personal knowledge or experience. Courts recognize that experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called general truths derived from specialized experience. A proffered expert recounting his experience concerning the use of terms in the industry is "testable" under *Daubert* in the sense that industry practice is provable (or disprovable) by equivalent testimony by experienced participants in the industry. The proffered expert's methodology employed must be rooted in the expert's practical experience.

### C. <u>Application</u>

The Court finds that Trezise's opinions, as permitted herein, are based upon sufficient facts and reliable principles and methods drawn from his background, including relevant experience. Trezise has decades of experience in the insurance industry (Trezise Dep. at 14),

11

during which he was exposed to the surplus lines market. (*Id.* at 41, 55.) Trezise's opinions regarding industry practice, including his opinions about the purpose of surplus lines policies (*see* Trezise Rep. at 5-6) and the general existence of standards and practices in the surplus lines market (*see id.* at 6; Trezise Dep. at 44), is based upon that experience.

Indeed, during his deposition, Trezise explicitly tied his conclusion regarding industry practice to his specialized experience:

> Q [Counsel for Defendant]: From your experience, is that pertinent these items, these advanced premium numbers got calculated?
>
> A [Trezise]: In my experience, no. The classification itself wouldn't go in there--as I said earlier. It's part of the program. So, it's more of identification of an insured that you wanted to insure and not necessarily going into the calculation of the premium. It's going to vary from insured to insured. Not necessarily going into the calculation of the premium. It's going to vary within insured to insured. Even in the admitted market, it will vary from insured to insured. So, [in] the Surplus Lines market it will be all over the place.

(Trezise Dep. at 45, 55.)

Defendant argues that Trezise's experience, which does not include participation in post-policy premium audits, does not align with the issues here. (Def.'s Mem. at 12-14.) However, such a "quibble" goes to the "weight and credibility," and not the admissibility of Trezise's opinion. *See McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995). Indeed, the Court has allowed Defendant's own expert, Nelson, who similarly does not have experience with specific issues in this case, to provide his opinion in this case for the same reason. *Am. Empire*, 2024 WL 3638329, at *8, 10.

Because Trezise "tie[s] observations to conclusions through . . . general truths derived from . . . specialized experience" in the insurance industry, *Nicholas v. Bratton*, 376 F. Supp. 3d 232, 290 (S.D.N.Y. 2019) (cleaned up); "the test of reliability is 'flexible,'" *Kumho Tire*, 526 U.S. at 141; there will be a bench trial; and the "standard of admissibility for expert opinions" under Rule 702 is "liberal," *Nimely*, 414 F.3d at 395, the Court finds that Trezise's opinions are based on sufficient facts and he used reliable principles and methods.

### III. Helpful To The Trier Of Fact

#### A. Parties' Positions

Defendant argues that Trezise lacks both experience and knowledge to assist the trier of fact to determine the facts in issue, and that the Trezise Report and the opinions therein should be excluded because the Trezise Report is comprised almost entirely of legal conclusions. (Def.'s Mem. at 14-16.) Plaintiff argues that Trezise possesses both experience and knowledge to help the trier of fact determine the facts in issue. (Pl.'s Opp'n Mem. at 6-8.)

#### B. Legal Standards

The Court incorporates the legal standards regarding whether expert testimony will be helpful to the trier of fact that are set forth in its prior Opinion and Order. *See Am. Empire*, 2024 WL 3638329, at *8-9. These standards are as follows:[8]

The Court must assess whether an expert's knowledge more likely than not will help the trier of fact to understand the evidence or to determine a fact in issue. To be admissible,

---

[8] In the following paragraph, the Court has omitted citations to the case law supporting each of the statements. The citations can be found in the Court's prior Opinion and Order. *See Am. Empire*, 2024 WL 3638329, at *8-9.

a district court must conclude that proposed testimony will assist the trier of fact. Rule 702's requirement that the proffered testimony assist the trier of fact goes primarily to relevance because if it does not relate to any issue in the case, it is not relevant and, ergo, non-helpful. By attempting to opine on questions of law, the expert is not considered helpful to the trier of fact because an expert is barred from giving testimony on issues of law.

**C.     Application**

Having found that Trezise possesses the qualifications to serve as an expert in this case, that he employed reliable principles and methods under Rule 702 (*see* Discussion Sections I-II, *supra*), and having considered the content of Trezise's opinion, the Court finds it is more likely than not that Trezise, at the very least, will help Judge Torres to understand the evidence and perhaps will help Judge Torres to determine a fact in issue.

Of note, too, Trezise's opinion is provided as rebuttal of Nelson's opinion, which the Court has found to be helpful. *See Am. Empire*, 2024 WL 3638329, at *9. "If Plaintiffs' expert testimony is helpful to the trier of fact, then [the] rebuttal of that testimony would also be helpful." *See Boone v. State Farm Fire & Cas. Co.*, No. 21-CV-00432 (GKF) (SH), 2023 WL 8470623, at *4 (N.D. Okla. Dec. 7, 2023).

Notwithstanding the foregoing, Trezise, like Nelson, should not be permitted to testify regarding legal conclusions. *See American Empire*, 2024 WL 3638329, at *9. Thus, the legal conclusions that are set forth in the Trezise Report must be excluded, for the reasons explained in the undersigned's prior Opinion and Order. *See id*. (interpretation of, and coverage provided by, insurance agreement are questions of law as to which expert testimony is not permitted).

Here, portions of the Trezise Report and related deposition testimony improperly reach legal conclusions. For example, the Trezise Report includes interpretation of policy language, such as the discussion of whether a professional liability exclusion clause in the Policy limits its coverage for New York Labor Law claims. (Trezise Rpt. at 9.) Similarly, Trezise's deposition testimony reflects legal conclusions, including the following:

> Q [Counsel for Defendant]: On Point 2 on Page 6 of your report, you say, "As a Surplus Line Insured the only obligation American Empire must meet are those stated in the contract of the policy. Normal rules of interpretation [may be] applied to those terms but nothing more than those words of interpretations may be read into the contract." Do you see that section?
>
> A [Trezise]: Yes.
>
> Q [Counsel for Defendant]: You still stand by that opinion?
>
> A [Trezise]: Yes, you got the contract and you have the rules of interpretation. That's what determines the contract.

(Trezise Dep. at 75.)

Such legal conclusions are not helpful to the trier of fact, because an expert's opinion on questions of law is inadmissible even when an expert—like Trezise, who is a former practicing attorney—has legal qualifications. *See Thor Equities, LLC v. Factory Mut. Ins. Co.*, 627 F. Supp. 3d at 342 (citing *Bilzerian*, 924 F.2d at 1294) (finding testimony about insurance policy coverage inadmissible, which was given by law professor with expertise in insurance law). Indeed, this case is analogous to that in *Marx & Co. v. Diners' Club Inc.*, where the Second Circuit held that the trial court erred by permitting an expert witness, a lawyer, to

15

opine on the legal obligations of contracting parties in a breach of contract claim. *See Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 508-09 (2d Cir. 1977).

Thus, like Nelson, *see Am. Empire*, 2024 WL 3638329 at *10, Trezise in rebuttal may provide testimony about the insurance industry and audits, and he may provide his opinion regarding premiums due under the Policy based upon a hypothetical set of facts. *See Scott*, 315 F.R.D. at 44 ("scope of a rebuttal is limited to the same subject matter encompassed in the opposing party's expert report"). Also, like Nelson, Trezise may not testify or provide his opinion about his interpretation of the Policy, and may not testify about any other legal conclusions. *See Am. Empire*, 2024 WL 3638329 at *10.

## CONCLUSION

For the foregoing reasons, Defendant's *Daubert* Motion is GRANTED IN PART and DENIED IN PART.

Additionally, now having determined the parties' *Daubert* motions, pre-motion conference letters for any contemplated motions for summary judgment shall be filed no later than Wednesday, November 20, 2024, in accordance with Judge Torres' Individual Practices. (*See* 5/13/24 Order, ECF No. 57.)

Dated:   New York, New York
October 21, 2024

_____
**STEWART D. AARON**
**United States Magistrate Judge**