UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/9/2025_
```

AMERICAN EMPIRE SURPLUS LINES
INSURANCE COMPANY,

                Plaintiff,

-against-

J.R. CONTRACTING & ENVIRONMENTAL
CONSULTLING, INC.,

                Defendant.

23 Civ. 4942 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, American Empire Surplus Lines Insurance Company ("American"), brings this action against Defendant, J.R. Contracting & Environmental Consulting, Inc. ("J.R."), for breach of an insurance policy. *See generally* Compl., ECF No. 1. Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 94, 99; *see also* Pl. Mem., ECF No. 98; Def. Mem., ECF No. 105; Pl. Reply, ECF No. 109; Def. Reply, ECF No. 111. For the reasons stated below, the motions are DENIED.

## BACKGROUND

I. Factual Background[1]

    A. The Policy

J.R. is an environmental contractor that performs, among other work, building demolition and asbestos abatement. Def. 56.1 ¶ 3, ECF No. 101. In 2021, American, an insurance company, issued J.R. a commercial excess liability insurance policy (the "Policy") for the period of July 23, 2021, to

---

[1] The facts in this section are taken from the parties' Rule 56.1 statements, unless otherwise noted. Citations to a party's Rule 56.1 statement include the other party's response. When "there are no citations or where the cited materials do not support the factual assertions in the [s]tatements, the Court is free to disregard the assertion." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (alteration omitted), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

July 23, 2022. *Id*. ¶ 12; *see also* Policy, ECF No. 95-2.[2] As relevant here, the Policy does not cover a wide spectrum of asbestos-related work and claims. *See* Policy at 14. The Policy also excludes from coverage certain silica-, lead-, mold-, and pollution-related work and claims. *See id*. at 25–28.

The Policy required J.R. to pay an advance premium. *See id*. at 8. This premium was subject to adjustment to be determined by audit upon the expiration or cancellation of the Policy:

> [Because] th[e] [P]olicy is subject to audit adjustment, the [final] premium shall be computed in accordance with [American's] rates and rating basis . . . upon the expiration or cancellation of th[e P]olicy. If the [final] premium is more than the [advance premium] . . ., [J.R.] shall promptly pay the excess amount to [American]   Any additional audit premium is due and payable immediately upon notice of such additional premium to [J.R.].

*Id*. at 12. The Policy further states that American "will compute all premiums for th[e] [P]olicy in accordance with [American's] rules and rates." *Id*.

When the parties entered into the Policy, American assigned J.R. an advance premium of $594,000. *Id*. at 8. This premium was based on J.R.'s estimated "gross receipts" of $4.5 million for the Policy period, multiplied by American's rate of "$132.00 [p]er $1,000" of gross receipts. *Id*. at 9; *see also* Def. Mem. at 7. The Policy does not define "gross receipts." Def. 56.1 ¶ 28; *see generally* Policy. J.R. paid American the $594,000 advance premium. Def. 56.1 ¶ 60.

According to J.R.'s president, Jerry Bijelonic, when J.R. calculated the $4.5 million in estimated gross receipts, the company accounted only for receipts resulting from work that was covered under the Policy. *See* Bijelonic Dep. at 49:20–50:16, ECF No. 100-4; Def. 56.1 ¶¶ 31–33; Def. Mem. at 8; Bijelonic Aff. ¶¶ 13–15, ECF No. 104. In other words, J.R. claims that, when it entered into the Policy and provided the $4.5 million figure to American, J.R. understood that gross receipts encompassed only receipts from Policy-covered work, not from work falling under the Policy's exclusions relating to, *inter alia*, asbestos. *See* Def. Mem. at 8.

---

[2] Citations to the Policy are to the ECF page number.

2

B. The Audit

After the Policy period expired, Matson Driscoll & Damico LLP ("MDD") audited J.R.'s financial records on behalf of American and determined that J.R.'s actual gross receipts for the Policy period totaled $8,192,315.14. *See* Pl. 56.1 ¶¶ 7–8, ECF No. 96; Def. Mem. at 8–9; Bijelonic Dep. at 37:11–38:14; ECF No. 95-3 at 3 (MDD's audit report). Based on these actual gross receipts and American's rate of $132 per $1,000 of gross receipts, American determined that J.R. owed an additional $487,386. Pl. 56.1 ¶ 8.

J.R. does not dispute that its actual "'gross receipts' figure for *all* work performed by [J.R.] during the [P]olicy period was $8,192,315." Def. 56.1 ¶ 53. It argues, however, that for purposes of calculating the additional premium, American cannot rely on this figure because the figure "fails to consider relevant Policy conditions and exclusions." *Id*. In other words, J.R. contends that, in computing J.R.'s actual gross receipts, "MDD simply reviewed [J.R.]'s bank statements," "added up [its] cash receipts during the Policy [p]eriod," and did not subtract receipts from work excluded by the Policy. *Id*. at ¶ 47; *see also* Def. Mem. at 14. J.R. has not paid American the $487,386. Pl. 56.1 ¶ 12.

II. Procedural Background

American filed this action on June 13, 2023, alleging that J.R.'s nonpayment of the additional premium constitutes a breach of the Policy. *See generally* Compl. Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 94, 99; *see also* Pl. Mem.; Def. Mem.; Pl. Reply; Def. Reply.

**DISCUSSION**

I. Legal Standard

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);

3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict" for the nonmovant. *Anderson*, 477 U.S. at 248.

The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact by citing specific evidence in the record. Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). If the nonmovant bears the burden of proof at trial, the movant may satisfy its initial burden by demonstrating that the nonmovant cannot produce admissible evidence to support the existence of a triable issue of material fact. *See Celotex*, 477 U.S. at 322–23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). If the movant meets its initial burden, the burden shifts to the nonmovant to establish a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105. "Although a party opposing summary judgment need not prove its evidence in a form admissible at trial or under the evidentiary standard which will be required, it must show facts sufficient to enable a reasonable mind to conclude that a material dispute of fact exists." *Healey v. Chelsea Res. Ltd.*, 736 F. Supp. 488, 491–92 (S.D.N.Y. 1990) (citation omitted). In deciding each cross-motion for summary judgment, the Court must view the record in the light most favorable to the nonmovant. *Koch*, 287 F.3d at 165.

II. Analysis

American argues that the undisputed evidence shows that J.R. owes the additional premium under the Policy. Pl. Mem. at 14. J.R. cross-moves for summary judgment, arguing that MDD's audit was defective and that any ambiguity in the Policy must be resolved in J.R.'s favor. Def. Mem. at 13–24.

"Insurance policies are contracts and are therefore interpreted according to the rules of contract interpretation." *Frazer Exton Dev., L.P. v. Kemper Env't, Ltd.*, 153 F. App'x. 31, 32 (2d Cir.

2005). Actions for unpaid insurance premiums are, therefore, analyzed as breach of contract claims. *Am. Empire Surplus Lines Ins. Co. v. B&B Iron Works Corp.*, No. 18 Civ. 6384, 2021 WL 4439760, at *3 (E.D.N.Y. Sept. 28, 2021). Under New York law, an insurer establishes a prima facie unpaid premium case "by submitting the subject insurance policy, the audit statement, and the affidavit of a knowledgeable officer or employee, such as the insurer's vice president or its accounts receivable and collection manager, which demonstrate[] the amount owed, pursuant to the audit, which was performed in compliance with the policy's terms." *The Burlington Ins. Co. v. Firequench, Inc.*, 2019 WL 316714, at *7 (N.Y. Sup. Ct. Jan. 7, 2019) (collecting cases); *see B&B Iron*, 2021 WL 4439760, at *3. These submissions "must establish, as a matter of law, that [the insurer] properly calculated the additional premium[] allegedly due." *Safeguard Ins. Co. v. E. Tetz & Sons, Inc.*, 706 N.Y.S.2d 351, 351 (N.Y. 2000); *see Seneca Ins. Co., Inc. v. Certified Moving & Storage Co.*, 920 N.Y.S.2d 320, 322 (2011). If a prima facie case is established, the burden shifts to the opposing party to establish a genuine issue of material fact that rebuts the prima facie case. *See B&B Iron*, 2021 WL 4439760, at *4.

American argues that it has set out a prima facie case by submitting the Policy; MDD's audit report; and the affidavit of Randy Myers, a senior vice president at American. Pl. Mem. at 17. These submissions, however, do not establish as a matter of law that MDD's audit was "performed in compliance with the [P]olicy's terms," *Firequench*, 2019 WL 316714, at *7, or that American "properly calculated the additional premium[] allegedly due." *Safeguard*, 706 N.Y.S.2d at 351.

As stated above, J.R. disputes whether MDD properly calculated J.R.'s actual gross receipts and, as a result, whether American correctly determined the additional premium. The Policy, however, is silent with respect to the computation of gross receipts: The term "gross receipts" is mentioned only once in the Policy, with respect to J.R.'s initial figure of $4.5 million in estimated gross receipts, and is unaccompanied by any definition or explanation of what gross receipts

5

constitute or how they should be calculated. *See* Policy at 9; *see generally id*. Although American admits that the term is undefined, it argues that it uses the Internal Revenue Service's ("IRS") definition of "gross receipts," which encompasses "the total amounts [an] organization received from all sources during its annual accounting period, without subtracting any costs or expenses." IRS, *Gross receipts defined*, https://www.irs.gov/charities-non-profits/gross-receipts-defined (last visited Aug. 5, 2025); *see* Pl. Mem. at 6; Pl. Reply at 4. But the Policy, again, makes no reference to the IRS or to the IRS' definition, and J.R. contends that it had a different understanding of the term when it entered into the Policy. Def. Mem. at 7–8.

In the face of a Policy that is silent on what the term "gross receipts" means, the parties offer differing interpretations: American understands gross receipts to include receipts from all of J.R.'s work; J.R. interprets gross receipts to include only receipts from Policy-covered work. There is, therefore, a genuine issue of material fact as to the meaning of gross receipts in the context of the Policy. *See, e.g.*, *Rec. Club of Am., Inc. v. United Artists Recs., Inc.*, 890 F.2d 1264, 1270 (2d Cir. 1989) ("Summary judgment as to the meaning of a contract term may not be granted when the term's meaning is not clear or is reasonably susceptible to more than one interpretation."); *Nat'l Gen. Ins. Co. v. Radoncic*, No. 20 Civ. 3876, 2022 WL 2066599, at *6 (S.D.N.Y. Jun. 8, 2022) (denying summary judgment when the insurance policy did not define the relevant term and the parties disagreed as to the term's meaning); *U S W. Fin. Servs., Inc. v. Marine Midland Realty Credit Corp.*, 810 F. Supp. 1393, 1404 (S.D.N.Y. 1993) (noting that "[s]ummary judgment is not appropriate when there are unresolved issues as to a party's intent" with respect to terms in a contract). Because American fails to establish as a matter of law that it properly calculated the additional premium, American's summary judgment motion is denied. *See Safeguard*, 706 N.Y.S.2d at 351; *Seneca*, 920 N.Y.S.2d at 322.

For similar reasons, J.R.'s motion for summary judgment is also denied. In support of its motion, J.R. submits its own, alternative audit, which J.R. contends "account[s] for . . . all the varied types of work that are expressly excluded from the Policy" and computes the final premium "based on only J.R.'s operations that are covered under the Policy." Def. Mem. at 18–19; *see* ECF No. 108-8 (J.R.'s audit). Pursuant to J.R.'s audit, the company's actual gross receipts for the Policy period total $1,832,119, which means that the final premium comes out to $241,840, significantly less than the $594,000 advance premium. Def. Mem. at 19. According to J.R., its audit establishes that the company owes no additional premium to American. Def. Mem. at 25–27; *see* ECF No. 108-8. The Court, however, declines to adopt J.R.'s audit at this stage: As explained above, there is a genuine issue of material fact as to whether, in calculating gross receipts, any auditor should look only to "J.R.'s operations that are covered under the Policy." Def. Mem. at 19. The accuracy of any audit, whether American's or J.R.'s, is a question for the jury.

## CONCLUSION

For the foregoing reasons, the parties' cross-motions for summary judgment, ECF Nos. 94, 99, are DENIED. Rule V of the undersigned's Individual Practices in Civil Cases governing pretrial submissions now applies. By **September 16, 2025**, the parties shall advise the Court whether they wish to hold a settlement conference before the Honorable Stewart D. Aaron or whether the parties intend to proceed to trial.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 94 and 99.

SO ORDERED.

Dated: September 9, 2025
New York, New York

_____
ANALISA TORRES
United States District Judge